Thank you, your honors. My name is Gary Dubin. I represent the Yamamoto's and I welcome you all on behalf of everybody to beautiful Honolulu. As you know, I'm the newest person in this case. I was detained for the purpose of this oral argument. And I say detained or retained a combination. And I've looked through the record. And for those of us who in part specialize in this area, I want to start off by mentioning the court. This is an important area of law and tell you the truth. This could be an important case because there are a lot of issues in this area where there are disputes between the circuits and somewhat confusing language in the statutes. And I looked through the record and I came across at least what I think are six errors or issues that it would help everybody if they were clarified by the Ninth Circuit Court of Appeals. And I'd like to go through these. Let me say, first of all, since I have 20 minutes, circumstances allowing your permission, I'd like to reserve 10 minutes of my time. However, it never seems to work out, but I'm going to try. Before you get started going down a list of six issues, let me ask you a preliminary question. And that is, as I read the opening brief, it actually preserved only one issue, which was the decision on the tender. And although other points were mentioned at the beginning, there was no argument developed with respect to them. So how come they are not abandoned? I wouldn't say they were abandoned because, as you know, there is the plain error doctrine. However, it's not hardly in a civil case. I mean, maybe at some level, but I guess it's up to the court. You know, the court has the power to look at the issues that it wishes to under a number of theories. But obviously, the opening brief was not the best example of appellate scholarship. I can see that. And it does focus on that one particular issue. I would suggest that you might at least want to start on the one issue that was developed on the offside chance that the panel would decide that you had abandoned the others. Well, actually, I think that three of my issues do go to that. Okay. And a couple others go to jurisdictional issues, which the court has an obligation, I think, to look at, again, if it wishes to. The first issue is, the uniqueness about this case is that there was no rescission granted, yet the court required a tender really prior to the rescission because it denied the motions for summary judgment on rescission. This is extremely unusual. What this really amounts to, it amounts to telling somebody that you've got to post some money before you get a trial on the merits. And I find that particularly offensive to due process considerations. Conceitedly, the trial court has the ability to change within certain boundaries the procedures for rescission. But I think almost every circuit, including this, has concluded that, in accordance with the language of the statute, the borrower does not have to first give the tender the amount in order to get the rescission. Once the court decides that there is a rescission, and under 1635A, the underlying mortgage is void because of the reluctance to allow forfeitures, and because of some, I think, 1995 ameliorative language of Congress, the court has the power to make it a conditional rescission. But the court can't order a conditional tender without a rescission. Well, that's your position, but I thought I heard you say that every circuit in ours has held that. The cases that I've seen. Well, which ones? I mean, if so, then this is an easy case. I think it really is. For example, in the district court in which I practice, the court has always held to the view that the tender has to take place in order to get the rescission, but not that the tender has to take place in order to have the rescission issue. I understand. I understand the importance of the issue, Mr. Dubin, but I am taking some issue with your apparent statement, which I may have misheard, that every circuit, including this one, has held that you can't do what the district court did here. I think the Palmer case, and I think the Seymour case, essentially say that. These are district court cases? No, those are your cases and my circuit. Well, they say we have discretion. The district judge has discretion. Isn't that what our cases say? Exactly. Particularly Palmer, that in certain circumstances, and then Seymour, that you have the ability to condition the rescission. Yes, but they don't say that you have no ability to do it beforehand.  Isn't that correct? I think it's true to say that I've never seen a case in my research, and I've done a lot of research, where there was ever a requirement that the borrower tendered before. I understand, but that's a fairly different statement from saying that all circuits, including this one, have held that you can't do it. That's correct. I didn't mean to say that. All right. So we're on square. Square one is that nobody is held one way or the other on the issue. Right. And as a practical matter, and I've in the last couple of years probably had about 50 of these rescission cases and nine out of 10 people are able to refinance. As a practical matter, you've got to get a credit clearing letter. And another issue that I had, which is the second issue, is that the amount wasn't stated here. So I've never seen a case where the court didn't say, OK, you've got so many days in which to pay X amount. But here there was no amount stated. Well, you know, isn't this a little unusual in that from day one, the borrower said they can't come up with any money. I mean, no how, no way can they come up with any money. They couldn't come up with $20,000, $40,000, let alone $140,000. They just couldn't come up with any money. So tell me why as a matter of policy, basically, the district court in those circumstances doesn't have discretion to say, OK, assuming rescission, can you make a tender? Well, there's two reasons. Number one is very few people have the cash available to make the tender. It requires refinancing. Some of my clients, for example, will sell the house. They'll get relatives to refinance for them. And therefore, just for somebody to say, well, I don't have the money in the bank is really quite unfair. Secondly, in order to refinance, you have to be able to show people that you've got the rescission. As a practical matter, you contact a new lender and you say, you know, I want to apply for this for this loan. And first thing I say, well, how much do you need? Well, I don't know how much because the judge didn't tell me. And then secondly, there was a request of the district judge to set an amount. In other words, the judge says, all right, you've got 60 days to make the tender. Was there a request either for more time or for a specific amount to be set? Your Honor, I haven't been in the case. I don't know informally whether there was on the record. There is no there's nothing on that issue at all. So isn't that the place to start? In other words, if there's a problem with the district court order, don't go back to the district court and say, Your Honor, I need a number. Well, I think it's up to the district court if it's going to issue a a conditional pre-rescission to set up the procedure. So the number can be determined because it leaves the parties, I suppose, to haggle over. But I can't, you know, I don't know whether you want to fault the borrowers who then had apparently an argument with their lawyer. And then the lawyer left the case to put that burden on him because this is such a unique thing to do. I don't think you can show me one case in American law, how significant the absence is, I'm not sure. I don't think you can show me one case in American law wherever a tender was asked for as the right to have the rescission issue decided. But I think you could look at it that way. You could fault the borrower and you could say, well, you should have, you know, but I mean, after all, it's the judge's obligation, I think. If you're going to if you're going to an effect, ask. This is an effect like a security bond. And what court what court would demand security for an injunction or as an attachment, not specify the amount. But, you know, like so much of American law, you can you can fault one side or the other. But this is so unique that surely the court should have provided that. And I want I'd like to reserve my time. I appreciate the questions you've asked because I'm more interested in what's on your mind and what's on my mind. But let me just point out one thing, which would someday is going to be clarified. This idea below. And this is a jurisdictional issue that if a borrower who's been in bankruptcy and discharged asserts a truth in lending claim that only the trustee has jurisdiction. The truth of the matter is, and I can give you the cases that the defense is owned by both the trustee and the individual. And here we have we have a foreclosure case going on in the circuit court. And what I'm doing now is I'm I'm I'm filing these cases not only based on affirmative claim, but for declaratory judgment on the affirmative defense. And I think it's been overlooked that the bankruptcy statute was changed several years ago. The state provision 362, where there is a an effect on the on the estate's property. The matter is state. But most courts are going ahead and saying, well, it doesn't it doesn't apply. But it's inconsistent because on the one hand, below the trial court said that the judge that only the trustee had standing. If only the trustee had standing. That certainly suggests that the that the case, the result of the case would adversely affect the property of the of the debtor. I suggest to you that that's been a confusion in the law. In this case should have been state under the automatic state provision of the bankruptcy court. Mr. Dubin, you just said something which reminded me of another question I had. What, if any, is the effect of the fact of the foreclosure on this case? It is a tremendous trust, a travesty of justice. From what I have seen, because the court here dismissed the truth in lending claim, the affirmative claim. The state court went ahead to foreclose on the property and denying the defense, the recoupment defense because of what Judge Samuel King did here. And yet it's clear from the law, the bankruptcy law, the federal law that the defenses are owned both by the debtor and by the trustee. So even despite what Judge King did, the debtor here, the Yamamoto, still should have had the truth in lending remedy. And yet what Judge King did was used as a basis for saying that they lost their remedy. But it doesn't mean the foreclosure in this case doesn't moot this appeal in any way. Or does it? Yes, that's a good question, because there is an appeal pending in the Hawaii Supreme Court on those issues. Well, let me give you an example. If this court were to reverse, then the basis for the foreclosure in the state court would be what would be pulled out from under the state court foreclosure. Because that was based upon what Judge King did, supposedly saying now the debtor doesn't have any TILA rights. And that that's totally wrong as a matter of bankruptcy law. And I have the cases here. If you'd be interested, I could put them on the record. And this is something that's time and time again, people argue that you can't assert the claim. It's true, an affirmative claim, but you can assert the affirmative defense. So if you were to reverse, the state court foreclosure case would evaporate. And there's no third party involved. My understanding is that the bank was the confirmed bidder. But my clients are still on the property. And to that extent, your decision has some urgency. I think I have five minutes left. May I reserve that time? Sure. Good morning to you all. My name is somebody is beeping. OK. Good morning, Your Honor. Mark Bernstein. I represent the fourth party defendant, U.S. Financial Mortgage, which is referred to as USF. The appeal before you does ask a very important question. And that question is whether or not the district court is powerless in the face of a TILA rescission plaintiff who says they can't honor their end of the TILA rescission bargain to do anything about it. Do we have to have what is a mock trial of a TILA rescission claim where the TILA rescission plaintiff swears under oath before the trial starts? It doesn't matter if you give me rescission. I can't hold up my end of the bargain. That is what the plaintiffs did in this case. Well, Mr. Dubin says they could have refinanced in those circumstances with a rescission in their hand. Well, they didn't. And the. Well, but they didn't have the rescission in their hand to do that is what he's saying. He's saying with a rescission in my pocket, I could have gone to a bank and said, look, I need the money to refinance. Except that the law commands the rescission plaintiff at the time of the notice to tender or offer to tender in order to generate on the part of the lender the obligation to record the release of mortgage. That is what the district court has said in Hawaii in the Riopta case. That is the obligation. Rescission is rescission. It's not foreclosure. And that brings up an issue that we always need to keep in mind in these cases. We tend to forget what rescission is and we tend to forget what the elements of it are and have historically been. And the statute commands the rescission tiller plaintiff to pay back the bank. This is not a matter of equity. You know, the district court exercising its equitable discretion to prevent a forfeiture on the part of the bank. This is what the statute says. The statute says that the lender signs a release of mortgage and meets the rescission tiller plaintiff with it. The rescission tiller plaintiff gives the lender the loan amount less everything they've paid. That's the deal. That's what 1635 says is supposed to happen. The bank gets the money back. The borrower gets their mortgage back. That's the deal. It doesn't say the borrower gets to do something else, gets to sell the house to a third party. Because you know what that is? That's foreclosure. In rescission, and let's take a look at this case. Before this deal happened, BNC had $172,500 and didn't have the Yamamoto's mortgage. After the deal, BNC mortgage didn't have $172,500. The Yamamoto's had it. Instead, they had the Yamamoto's note and mortgage and probably about $15,000 in closing costs. What do we do when we do rescission? We undo that. At which point in time, BNC would have their money back, less the money they had been given if they violated tiller. And that's a heavy penalty, a very, very heavy penalty. And the Yamamoto's would have their mortgage back. That's rescission. They'd still have their house. The idea that they sell their house to a third party and use the net proceeds, well you know, that's foreclosure. And it's important to note this because the Truth in Lending Act gives that plaintiff, that borrower, the right to get that very offset in the foreclosure case. They don't have to pay 100% back. They have to pay only the loan amount, no interest. Everything they paid is credited to principal. That's all they have to pay back. And that's in foreclosure. But in rescission, they've got to pay the money back. Period. This is not some kind of game, and yet that's what the tiller plaintiffs are doing. They come into the United States District Court. They have no ability to rescind, no capacity to rescind, and they don't rescind. What they wind up doing is they wind up spending two or three years in the property, paying nothing, and then it's sold to some third party. That's not rescission. That's foreclosure. That is not their right under 1635. Their right under 1635 is to show up with the money and get their mortgage back. Now, the statute says the lender is supposed to the, it says, first of all, the mortgage is void. Then it says the lender is supposed to take steps to release the security interest. That's the release of mortgage. And then it says, whereupon the borrower shall pay. Shall. Not may. Not something else. Shall pay. That's what rescission is. We all learned it in law school. And in fact, an element of a claim for rescission is offering back the money. If you'll just look at common law cases, rescission requires that the plaintiff who is seeking rescission has either tendered back the money or offered to tender back the money. Which, of course, is what we have done here in the Riata case. Where the court has said, till it doesn't say you get a free house, it doesn't say you ever get a free house. It says you have to tender or offer to tender. The Yamamoto's neither tendered nor did they offer to tender one dollar to anybody at any time. Never. They never asked the district court for more time to do anything. They never asked the district court what the amount was, although the record has it as being less than $140,000. They never offered to do that which they are required to do in order to take advantage of the tiller bargain. Which means, let's ask the question that really is on the mind, you know, my mind in terms of the standing issue. If you give me the right to rescind and I can't take advantage of it, do I have standing? Has my injury been redressed? Is it redressable? I think the answer is clearly no. If a plaintiff won't stand up in front of the district court and say, if you give me rescission, I will pay, why should we have a trial? What's the purpose of such a trial? I mean, there's a lot going on here that we need the United States. It has to be conceptualized as standing, isn't that just a matter of discretion in the district court? Well, I think they have the discretion in terms of the process, but not the deal. The deal is they have to pay the money back. The statute says they've got to pay the money back. And if they say, I can't, do we have a trial? I think the case law says no. If you can't take advantage of a favorable ruling, what's the point? Just a mock trial? Just to generate some attorney's fees? It's got no point at all. It makes a mockery of everything. We don't have trials just for fun, except moot court. And that's to learn, not just for fun. We have trials to redress injuries. The only claim here that had any possibility of going forward was Maxine Yamamoto's rescission claim. She was the only one who didn't assign that claim to the bankruptcy court. She said she couldn't pay anything. On top of it, Maxine Yamamoto is not a tiller plaintiff. Maxine Yamamoto didn't own any interest in this house at the time of this law. After she signed the papers and signed that note and signed that mortgage, she got a 25% interest in the house. That's a purchase money mortgage. It looks like a duck, got feathers and bills and quacks. It's a duck. She didn't own it before. After the deal, she owns it. That's not a loan that's subject to tiller rescission. We'll put it on the side for a while. She still couldn't honor her end of the bargain. That's the deal. And when she comes to court and admits it, the district court does not have to go through with the trial just for the fun of it. That's the point here. But you have to understand what the tiller plaintiffs want. They want the delay. They want to save their house. I respect it. I understand. I think we all do. If you're faced with the threat of losing your home, you're going to do what you have to do. But they want delay. They can't rescind. They have no money to rescind. They have no capacity to rescind. They want the three years. That's what they want. They could, in foreclosure, get the benefit of the reduced amount, but that would mean they'd be out of their house in six months. That's not what they want. They want to be out of their house in three years and sell it to somebody else. And where are the other proceeds? There may not be any. Now, I can't, and I have to leave some time for my colleagues, because I can't speak to the question of mootness, but it is an interesting question. The house is gone. Plaintiffs aren't in it. A third party's got it. I'm not sure what, if anything, could be done in terms of the case, but I think in the Seymour case, there also was the same issue, and there was no mootness because, allegedly, there was still a pending damage claim of some kind. Here, there's no damage claim because the damage claims were barred by the statute of limitations, and as a matter of law, Bank of New York was not liable for refusing to record a release of mortgage in the absence of a tender or offer to tender in accordance with REACTA. So unless the Court has questions of me, I'm through with my presentation. Thank you very much. All right. Mr. Jones is next. May it please the Court. I'm Stephen Chung. I'm the attorney for BNC Mortgage, Inc., and I won't repeat the argument that Mr. Bernstein made. Obviously, we agree with his position. We think that the issues have been briefed. I would just like to point out a few things. One, TILA is not a substitute for the bankruptcy code, but yet that is what the consumers think it is. Ever since CMAR, 1986, CMAR versus Platte Valley Savings, 791-5-2-699, where this Court held that TILA has to be strictly construed even when you are dealing with unsympathetic plaintiffs, plaintiffs, consumers, have said, this is a windfall. We can default on our mortgages. We don't need to make any payments, and when the lender forecloses, all we have to do is rush over to the Court, file a claim for rescission, show that we have an alleged defective notice of right to cancel, and we can put off paying any mortgage payments until the time of trial. And then if the Court finds in our favor and finds that the notice of right to cancel was in fact defective because it was signed the day before it's shown on the document, then I can ask the Court for a plan of reorganization to give me some time to go out and obtain refinancing or to sell the home or to do something else. That is not what Congress nor TILA requires. As Mr. Bernstein points out, TILA requires that there be a contemporaneous closing of this rescission transaction. When the notice of right to cancel is elected or when the rescission right is elected, the consumer has to be ready, willing, and able to complete the process within a very narrow period of time. The Code and the regs contemplate that the lender is going to tender the return of any property given within 20 days and to cancel the security interest, whereupon the consumer is going to tender the return of the net loan proceeds. That's a very narrow window of time, not two or three or four years, as occurred in this case. I won't belabor the point. The point in which, in our case, the Court entered its ruling was on a motion for summary judgment, and as we know, an emotion for summary judgment, the parties are not entitled to rest on mere allegations or speculations as to what will happen. They are required to prove or to come up with evidence that will support and prove the elements of their case. The Yamamoto's did not do any of that. What the Yamamoto's did was said, we have an alleged defective notice of right to cancel. We can't repay the loan. We're not rich. We don't have money in the bank. TELA is not, rescission is just not for rich people. We have, but we have a defective notice of right to cancel, and somehow this gives us the right to some kind of bankruptcy relief. The Court is obligated to provide us with a period of time to come up with the money, some plan of reorganization to come up with the money to repay the loan. Well, that's not what TELA said. TELA says you repay within a short, narrow period of time. They didn't do that. They didn't prove that they had the ability to repay the loan, and TELA says, well, if you can't do that, then the Court, if you can show equitable considerations, has the discretion to modify the procedure. Did the Yamamoto's come up with any kind of evidence showing that they had some right to invoke the Court's equity jurisdiction? They did not. What the record showed was that they had not made any mortgage payments for almost four years. They had filed bankruptcy petitions to discharge their obligations. They filed another bankruptcy petition to try to divest the Court of Jurisdiction. They admitted that they couldn't repay the loan proceeds, and that's what they presented to the Court. And under those circumstances, they did not meet the requirements of Rule 56 and do any kind of evidence to show that they were entitled to any kind of relief. And on that basis, and I agree with Your Honor that the Court had the discretion to say you're not entitled to relief, but I'm going to give you 60 days anyway. Show me that you can tender – show me some evidence that you can tender the return of the loan proceeds. Otherwise, I'm going to dismiss the case. And when they failed to do that, when they failed to file a motion for reconsideration or to ask for any other relief, the Court dismissed the case. And we submit, Your Honor, that that decision ought to be affirmed. Thank you. Mary Martin. Good morning, Your Honors. May it please the Court, Mary Martin on behalf of the Bank of New York. I will be brief and only speak to one of the issues that you have raised, and that's the question of mootness. Since I do represent the bank, I know what happened afterwards in the lower court. And, yes, the foreclosure did go forward following Judge King's ruling, and the property was sold to a third party who has closed and paid – the bank has received some money, and there is a deficiency judgment against Maxine Yamamoto, the daughter, obviously not against the parents since they were discharged in bankruptcy. The question then becomes, is it or is it not moot, as you succinctly stated? We believe it could be moot, but there would have to be, if this Court chose to reverse, there would have to be a determination as to that exact amount owed and whether there was any surplusage in the actual auction price for the property. The property sold for approximately $155,000. I think likely that it would not mean that any surplusage would go to the Yamamotos, but that would be – that would mean that a clarification would need to be made on the record as to whether there was anything, and therefore it is not moot. Unless the Court has any other questions for me, I will stand by the arguments that my colleagues made. Okay. Thank you. Thank you. Okay, Mr. Dubin. Your Honors, I want to go right to the heart of the issue. As I told you before, throughout the United States and the federal courts, there is no obligation to tender until there is rescission. For example, the D.C. Circuit Brown v. National Permanent Federal Savings Loan Association, 221 – excuse me, 683 F. 2nd. 444. When debtor exercises right of rescission, Truth in Lending Act does not require debtor to tender first. Rather, under sequence of events anticipated by statute, creditor must tender before borrower's obligation arises. In this circuit, Palmer v. Wilson, 502 F. 2nd. 860. Requirement of tender of consideration as prerequisite to rescission was abolished by Truth in Lending Act. Where lender violated provisions of Truth in Lending Act, borrowers are entitled to right of rescission despite fact that they did not tender money loaned to them at the time they notified lender of their decision to exercise right. The bankruptcy courts similarly. In re right, Bankruptcy Court, Southern District, Mississippi, 11, Bankruptcy Reporter, 590. Creditors demand that debtor tender loan proceeds as condition preceding exercise of debtor's rescission right is rejected, even though creditor will be stripped of its security interest. Finally, Fourth Circuit, 390. Okay, this is not the Fourth. This is the Fourth Circuit, Louisiana, 390, Southern 2nd. 1347. Although creditor's forfeiture of loan proceeds is conditioned on prior tender by debtor of such proceeds, debtor's right to rescission is not conditioned on such tender. Now look at the logic. If the federal courts hold that the borrower doesn't have an obligation to tender until the security interest is conditioned or otherwise terminated, then obviously there can't be a requirement of tender even before the rescission is announced. The other point I want to make is that, of course, these are harsh remedies. Now, I have to tell you, frankly, that if I had been in the United States Congress, I would have thought there were better ways to guard against predatory lending practices. But I'm not in the United States Congress, and neither is this court. The Congress has set up a procedure for harsh remedies as a means of controlling predatory lending practices. Now, we hear a lot of emotional rhetoric in these cases. They want a free house, et cetera. I always tell my colleagues who represent the lenders, if you believe in what you're saying, when you get a notice from these kind of people that say, we want to rescind, all you got to do is say, okay, rescind. We'll give you 60 days, come up with the money. This case would have been over years ago. Yet the lenders want it both ways. They want to say that the borrowers can't come up with the money, and yet they're the ones that drag it out. In truth, most borrowers can because they have friends and relatives. What is missing in this analysis here is that these houses are worth money. It's the house itself that can refinance it. Once you can show a lender that you've got the rescission remedy and you get a credit-clearing letter, I've got some nice credit-clearing letters on my computer about how the dispute's been amicably resolved, and you can usually rescind. Now, on the issue of mootness, Your Honor, my information just last week is the alma maters are still in the house. But this is a jurisdictional issue. 1635A, under the Supremacy Clause of the United States Constitution, the Congress of the United States says that if there's a tiller violation and you don't grant the rescission, the word is void under the Federal Supremacy Clause of the United States Constitution through the Interstate Commerce Clause, regulating the secondary mortgage market. It's void. So if it's void, then the state court has no subject matter enforcement jurisdiction. If there's still a claim here, who does it belong to? Who's the real party in interest? Your Honor, the real party in interest is these borrowers. Well, Maxine, what is her – she wasn't discharged in the bankruptcy, so she has some equity, apparently. That's right. If there's anything left in the property. But I invite the court to look at the case of – you know, you can understand my frustration. I didn't brief this case. I would just invite the court to look at Texas Trust Savings Bank v. Nassar, 120 Bankruptcy Reporter 855, page 858, in the Southern District of Texas, 1990, explaining that Section 558 of Title 11 of the United States Code gives the debtor coterminous control of the tiller remedy. Sylvester v. Martin, 130 Bankruptcy 930, Illinois, Northern District, 1991. Same thing. The debtor can defend the tiller remedy. Obviously, this is a very valuable right that Congress gave borrowers. The debtor – I've had cases, for example, where the debtor prevails and then it goes back to the bankruptcy court, and then the bankruptcy creditors get some of the money for the extra that the borrower secured in the rescission. It is just not true, and I have to concede to you that there's very few cases in the truth and lending field that recognize the truth of the bankruptcy code. One, it affects the property of the debtor. This was a change, I think, in 1995. Prior to that time, it was only actions against the debtor, but now it's affecting the property of the debtor. When these people go into bankruptcy, for most people, this is the most valuable asset they have, is their home. I think you all know how expensive Hawaiian homes are. Obviously, in a forced sale and foreclosure, you're going to get 50% to 75% of the value. In answer to your question, the debtor, the borrower, the Yamamotos, Maxine, they're the ones that have the true standing. For example, what I do now is I don't file affirmative claims in the federal court. I file for a declaratory judgment based upon the defense. So, you know, these important rights shouldn't turn upon how clever a draftsman you are. These people have a right under federal law. There can not possibly be anything in the nature of a requirement. Before you get your tiller remedy, you've got to show how much money you have in the bank. Thank you very much. Thank you, counsel. Your argument in the matter just argued will be submitted. We'll hear next from
judges: B. Fletcher,kozinski,trott